## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,

        Plaintiff,


v.                          **MEMORANDUM OF LAW & ORDER**
                                  Criminal File No. 07-201 (MJD/FLN)


(5) ARMANDO YBARRA,

        Defendant.

_____

Jeffrey Bryan, Assistant United States Attorney, Counsel for Plaintiff.

Douglas A. Myren, Counsel for Defendant.

_____

## I.    INTRODUCTION

      This matter is before the Court on Defendant Armando Ybarra's Motion for

Judgment of Acquittal or for a New Trial.  [Docket No. 219]

## II.    BACKGROUND

      On June 12, 2007, Defendant Armando Ybarra was indicted on Count 3,

Distribution of Marijuana, occurring on May 9, 2007; and Count 6, Conspiracy to

Distribute 100 Kilograms or More of Marijuana, occurring as early as May 9, 2007

until on or about May 14, 2007.  A jury trial on those counts began on March 24,

2008.  A half day of trial was held on March 25.  A full day of trial occurred on

March 26.  Trial ended on March 27 and the jury began deliberations at

approximately 3:00 p.m. that afternoon.  The jury deliberated all day on Friday,

March 28, 2008.  The jury deliberated until 12:30 p.m. on Monday, March 31,

2008, and then reconvened at noon on Tuesday, April 1.

On the afternoon of April 1, the jury asked, among other things, "What

happens if we can't come to an unanimous agreement on the counts?"  In

response to this jury question, at approximately 2:00 p.m., the Court provided the

jury with Eighth Circuit Model Jury Instruction 10.02, the so-called <u>Allen</u> charge.

At 4:20 on the afternoon of April 1, the jury notified the Court that it had reached

a verdict.  The verdict was "undecided" on Count 3, Distribution of Marijuana;

"not guilty" of the crime of Conspiracy to Distribute 100 Kilograms or more of

Marijuana as charged in Count 6 of the Indictment; and "guilty" of the crime of

Conspiracy to Distribute Less than 100 Kilograms of Marijuana.

Ybarra now moves for acquittal or, in the alternative, for a new trial.

## III.    DISCUSSION

### A.    Motion for Acquittal

### 1.     Standard

When deciding a motion for acquittal, the Court views "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict."  United States v. Rice, 449 F.3d 887, 892 (8th Cir. 2006) (citation omitted).  The Court "will overturn a jury verdict based upon insufficiency of the evidence only if it is clear that no reasonable jury could have found guilt beyond a reasonable doubt."  Id. (citations omitted).  "Under this stringent standard, a verdict will be overturned only in rare cases."  Id. (citation omitted).

### 2.     Sufficiency of the Evidence

Based on its review of the evidence submitted at trial, the Court concludes that there was sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, the existence of the essential elements of the crime of Conspiracy to Distribute Less than 100 Kilograms of Marijuana.

### 3.     Allegations of an Inconsistent Verdict

Ybarra argues that the jury's verdicts – of undecided on one count, not guilty on another count, and guilty on the lesser conspiracy charge – are

inconsistent.

Ybarra asserts that evidence at trial demonstrated that, on May 9, 2007, he removed a plastic bag containing approximately 3 pounds of marijuana from the back of a vehicle he had been driving and handed that bag to co-Defendant Oswaldo Quiroz-Mendieta, who later sold the marijuana to a police informant. At trial, Ybarra argued that he was not guilty of distributing those 3 pounds of marijuana because he did not know that there was marijuana in the bag. Ybarra reasons that, because the jury was hung on Count 3, one or more jurors believed that the Government had not proven beyond a reasonable doubt that Ybarra knew there was marijuana in the bag when he handed it to Quiroz-Mendieta. Therefore, Ybarra concludes, the 3 pounds of marijuana distributed on May 9 could not have formed the basis for the jury's unanimous conviction of Ybarra for the charge of Conspiracy to Distribute Less than 100 Kilograms of Marijuana.

Ybarra also notes that far more than 100 kilograms of marijuana were found in the stash house. Therefore, he concludes that the marijuana found at the stash house could not have formed the basis for the jury's conviction of Ybarra on the charge of Conspiracy to Distribute Less than 100 Kilograms of Marijuana.

Ybarra then argues that there was no evidence that he was involved in the

4

May 3 distribution of one pound of marijuana or in the May 9 distribution of two pounds of marijuana, both by Quiroz-Mendieta to the police informant.  He also reasons, that if the jury had determined that either of those quantities of marijuana had formed the basis for the conviction of the lesser conspiracy charge, then the jury would also have convicted Ybarra on Count 3 and Count 6 because the May 3 and May 9 transactions by Quiroz-Mendieta occurred before the May 9 transaction involving Ybarra.

Finally, Ybarra asserts that evidence of the approximately two pounds of marijuana found on May 14 in the apartment rented by Ybarra is insufficient to support a finding, beyond a reasonable doubt, that Ybarra knowingly, voluntarily, and intentionally joined in any conspiracy to distribute marijuana, because the incriminating evidence could have been brought into the apartment after Ybarra had stopped residing there.

Because of the different elements of the conspiracy and the substantive crime alleged, – and given the hung verdict on the underlying count – the verdict rendered was not necessarily inconsistent.  In any case, even if the verdict had been inconsistent, that would not provide a basis for a new trial or a judgment of acquittal.

"[I]t is well established that inconsistent verdicts on the same indictment as to the same defendant are unobjectionable." United States v. Fuller, 374 F.3d 617, 623 (8th Cir. 2004) (citing United States v. Powell, 469 U.S. 57, 62-63 (1984)). "[T]here is no reason to vacate [a defendant's] conviction merely because the verdicts cannot rationally be reconciled." Powell, 469 U.S. at 69.  This rule applies even in a case in which the jury acquits a defendant of a predicate felony, but convicts him on the compound felony, id. at 67-69, a situation not in existence here, where Ybarra received a hung verdict on the distribution count, which was not a predicate for the conspiracy count.

### 4.    Ybarra's Argument Regarding Jury Instruction No. 17

Ybarra also asserts that the jury's verdict is inconsistent with Jury Instruction No. 17.[1]  Jury Instruction No. 17 provides:

> A conspirator is liable for all acts and all declarations of co-conspirators made or done in furtherance of the conspiracy, including those occurring prior to his joining the conspiracy.
>
> Therefore, you may consider acts knowingly done and statements knowingly made by the defendant's co-conspirators during the existence of the conspiracy and in furtherance of it as

---

[1]Although Ybarra references Jury Instruction No. 18 in his brief, the language he quotes and his discussion demonstrates that he is, in fact, referring to Jury Instruction No. 17.

evidence pertaining to the defendant even though they were done or made in the absence of and without the knowledge of the defendant. This includes acts done or statements made before the defendant had joined the conspiracy, for a person who knowingly, voluntarily and intentionally joins an existing conspiracy is responsible for all of the conduct of the co-conspirators from the beginning of the conspiracy.

Acts and statements which are made before the conspiracy began or after it ended are admissible only against the person making them and should not be considered by you against any other defendant.

Ybarra asserts that the jury's verdict – that Ybarra had knowingly, voluntarily, and intentionally joined in a conspiracy to distribute less than 100 kilograms of marijuana, but had not knowingly, voluntarily, and intentionally joined in a conspiracy to distribute more than 100 kilograms of marijuana – contradicts Jury Instruction No. 17.  He argues that, if Ybarra is liable for the unknown acts of his co-conspirators, then, if he did indeed join the conspiracy, he would necessarily have been liable for more than 100 kilograms of marijuana, based on the fact that more than 100 kilograms of marijuana were recovered from the stash house.

The jury's decision was not inconsistent with Jury Instruction No. 17.  As explained in Jury Instruction No. 15, in order to find Ybarra guilty of Conspiracy

to Distribute 100 Kilograms or more of Marijuana, the jury was required to find

that "the agreement or understanding involved 100 kilograms or more of

marijuana."  Jury Instruction No. 15 further explained:

> The quantity of controlled substances involved in the
> agreement or understanding includes the controlled substances the
> defendant possessed for personal use or distributed or agreed to
> distribute.  The quantity also includes the controlled substances
> fellow conspirators distributed or agreed to distribute, if you find
> that those distributions or agreements to distribute were a necessary
> or a natural consequence of the agreement or understanding and
> were reasonably foreseeable by the defendant.

Consistent with the Jury Instructions, the jury could have concluded that, from

Ybarra's perspective, it was only reasonably foreseeable that his co-conspirators

were involved in trafficking less than 100 kilograms of marijuana.  The actual

quantity of marijuana recovered from the stash house may have been larger than

the amount that the jury concluded was, beyond a reasonable doubt, reasonably

foreseeable.

### 5.    Jury Questions

Ybarra also asserts that the jury's questions demonstrate the jurors'

inability to follow the Court's instructions.  He notes that, in Jury Question No. 2,

the jury asked, "If we cannot come to a unanimous decision on element #4 of

Count 6, are we to find the defendant 'not guilty' . . . and then move onto the conspiracy of 'less than 100 kilograms'?"  [Docket No. 206]  Ybarra notes that the Jury Instructions clearly state that the jury must come to a unanimous agreement on every element of each count.  Later, after the Court had answered that question, the jury asked, "Do we need a unanimous vote of Guilty or not Guilty on a given 'count' – not the individual element – to give a verdict of guilty or not guilty?"  [Docket No. 212]  Ybarra asserts that this demonstrates that, even near the end of their deliberations, the jury did not understand the Jury Instructions and did not follow them.

The Court rejects Ybarra's argument regarding the jury's questions.  "A jury is presumed to follow its instructions.  Similarly, a jury is presumed to understand a judge's answer to its question."  Weeks v. Angelone, 528 U.S. 225,234 (2000) (citations omitted).  Rather than demonstrating an inability to follow the Jury Instructions, the jury's questions demonstrate an attempt to understand and follow the Jury Instructions.  Ybarra points to no evidence that the jury did not follow the Court's instructions or understand the Court's answers to its questions.

**B.**     **Motion for a New Trial**

1.      **Standard**

Under Federal Rule of Criminal Procedure 33, the Court may vacate any

judgment and grant a new trial if the interest of justice so requires.  The decision

of whether to grant a new trial is within the broad discretion of the district court.

United States v. Dodd, 391 F.3d 930, 934 (8th Cir. 2004).  "The court should

balance the alleged errors against the record as a whole and evaluate the fairness

of the trial to determine whether a new trial is appropriate."  United States v.

Eagle, 137 F.3d 1011, 1014 (8th Cir. 1998) (citation omitted).

2.      **Allegation of an Inconsistent Verdict**

Ybarra argues that, if the jury followed Jury Instruction No. 17, it could not

have logically found him guilty of a Conspiracy to Distribute Less Than 100

Kilograms of Marijuana but not guilty of Conspiracy to Distribute 100 Kilograms

or more of Marijuana.  As previously explained, the Court rejects this argument.

Ybarra is not entitled to a new trial based on his allegations of inconsistency

within the verdict.

3.      **Allen Charge**

Ybarra also argues that the Court's Allen charge was impermissibly

coercive and violated his Fifth Amendment right to due process and his Sixth

10

Amendment right to a fair trial.

### a.    Standard

"[F]our elements bear on whether an *Allen* charge had an impermissibly coercive effect on the jury: 1) the content of the instruction, 2) the length of deliberation after the *Allen* charge, 3) the total length of deliberation, and 4) any indicia in the record of coercion or pressure upon the jury."  United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991) (citation omitted).

### b.    Content of the Instruction

The content of the instruction that this Court used, Eighth Circuit Model Criminal Instruction 10.02,  has been "expressly approve[d]" by the Eighth Circuit Court of Appeals.  Thomas, 946 F.2d at 76; see also United States v. Aldridge, 413 F.3d 829, 832-33 (8th Cir. 2005) ("This model instruction has been accepted by this court as non-coercive in content.") (citing Thomas, 946 F.2d at 76).  The language was not coercive.

Ybarra argues that even this approved language became coercive in light of the Court's comments to the jury regarding the expense of a federal jury trial and "misstatement" regarding the result of a mistrial.  Ybarra points out that, before breaking for lunch during jury selection, the Court instructed prospective jurors

not to talk to anyone about the case and explained:

> As you see, we're taking a lot of time, this is a very expensive
> proposition, and, so, we do not need outside influences influencing
> your decision-making process.  And I take it very seriously, and you
> should know that I take it very seriously.  And, so, I need you to
> follow my instructions to the "T."

(Partial Mar. 24, 2008 Tr. at 7 [Docket No. 224].)

Ybarra further notes that, before the jury retired to begin its deliberations,

the Court excused the two alternate jurors and stated,

> Members of the jury, as you see, there's 14 of you.  Two of you have
> been my insurance policy to make sure that this case could come to a
> conclusion.  During the course of a trial, whether it's one day or six
> weeks long, there is always a possibility that a juror would become
> ill or an emergency in their family to keep them from being able to
> serve on the jury.  And if we went down to less than 12 jurors, then I
> would have a mistrial, which means we'd have to try the case again.
> And, as you can see, trials are very expensive – calling a jury, having
> the witnesses brought in, and having the attorneys present in court.
> And, so, we have an insurance policy, that's alternate jurors.

(Partial Mar. 27, 2008 Tr. at 3 [Docket No. 227].)

Ybarra argues that the Court emphasized the expense of a federal jury trial,

emphasized the importance of reaching a decision, and misstated that, in the

event of a mistrial, the case would have to be tried again.  Ybarra argues, that in

case of a mistrial, there would be several possible outcomes other than retrial,

such as a decision by the Government to dismiss the case or a plea agreement.

The Court concludes that its comments to the jury were not coercive or in error.  The Eighth Circuit has previously approved of instructions to the jury emphasizing the expense of a federal trial and discussing a future retrial in the event of a mistrial.  For instance, in United States v. Smith, the appellate court approved an Allen charge that stated, in part:

> This is an important case.  The trial has been expensive in time and effort and money to both the defendant and the prosecution.  If you should fail to agree on a verdict, the case is left open and undecided, and like all cases, it must be disposed of at some time.

> There appears no reason to believe that another trial would not be costly to both sides nor does there appear any reason to believe that the case can be tried again by either side better or more exhaustively than has been tried before you.  Any future jury must be selected in the same manner and from the same source as you have been chosen.

635 F.2d 716, 722 (8th Cir. 1980).

Nothing in the content of the Allen charge or the Court's comments to the jury was impermissibly coercive.

### c.        Length of Deliberations after the Allen Charge

The Court gave the Allen charge to the jury at approximately 2:00 p.m. on April 1, and the jury then returned the verdict approximately two-and-a-half

13

hours later, approximately one-half hour before the jury was scheduled to be

discharged for the day.  The Court finds that the length of time of deliberations

after the <u>Allen</u> charge does not indicate coercion.  <u>See</u> <u>United States v. Aldridge</u>,

413 F.3d 829, 833 (8th Cir. 2005) ("There is no established bright-line for an

acceptable length of deliberation after an *Allen* charge.  However, this court has

found ten minute, forty-five minute, and one hour deliberation periods to be

acceptable.") (citations omitted); <u>United States v. Johnson</u>, 411 F.3d 928, 930-31

(8th Cir. 2005) ("The jury deliberated for approximately 2 ½ hours after the

district court administered the *Allen* instruction, a period of time that we have

concluded is not indicative of coercive effect.") (citations omitted).

### d.    Total Length of Deliberations

The trial lasted less than three full days and jury deliberations lasted

slightly less time.  "[T]here is no clear rule as to the proper amount of

deliberation time, and the appropriateness of the deliberation time is dependent

on the facts of a particular case."  <u>Aldridge</u>, 413 F.3d at 833 (citation omitted).

Although deliberations lasted only slightly less time than the trial, deliberations

began late in the day on the first day, were interrupted by the weekend after the

second day, and were interrupted by a twenty-four hour recess after half a day of

14

deliberations on the third day.  The jury was required to start and stop

deliberations, which undoubtedly added to the length of the deliberations.

Additionally, starting the second day of deliberations, the jury had at least one

question each day, which added to the deliberation time while the jury sent out a

question, waited for the Court to confer with the attorneys and provide an

answer, and then applied the answer to its deliberations.  Given these facts and

the facts of this case, which required the jury to analyze various circumstantial

evidence to determine Ybarra's state of mind, the Court concludes that the total

length of the deliberations does not indicate coercion.

### e.     Other Indicia of Coercion or Pressure on the Jury

Ybarra also objects that to the timing of the Court's <u>Allen</u> charge.  The jury

was instructed at approximately 2:00 p.m. on the fourth day of deliberations.

Ybarra argues that giving the <u>Allen</u> charge in the afternoon pressured the jury to

return a verdict in order to avoid returning the next day.  He asserts that travel

was difficult because the area had recently experienced a snowstorm and the

fiance of one of the jurors had been hospitalized, causing the juror to ask to be

excused if the jury did not reach a verdict by noon on March 31.  [Docket No. 208]

The day before giving the <u>Allen</u> charge, the Court had already granted a

twenty-four hour recess from deliberations to accommodate both the weather and the juror whose fiance had been hospitalized.  It gave the <u>Allen</u> charge in response to a specific jury question, and there were hours left in the day to deliberate.  Additionally, there is no allegation that any jurors improperly influenced other jurors.

Ybarra also asserts that the Court erred when it provided the <u>Allen</u> charge as a response to a specific jury question instead of giving the <u>Allen</u> charge as part of its overall instructions to the jury before deliberations commenced.  The Eighth Circuit has rejected this very argument.  <u>United States v. Warfield</u>, 97 F.3d 1014, 1022 (8th Cir. 1996).

Finally, the fact that the jury's verdict was a hung verdict on Count 3, indicates that it was not coerced by the <u>Allen</u> charge into reaching a unanimous verdict on the conspiracy charge.

The Court concludes that the <u>Allen</u> charge was not coercive.

### 4.      Refusal to Give a Withdrawal Instruction

After the jury had been deliberating for one-and-a-half days, Ybarra requested, for the first time, that the Court give the jury a supplemental instruction regarding withdrawal from a conspiracy.  [Docket No. 196]  The

Court denied Ybarra's motion.  [Docket No. 200]  Ybarra asserts that he renewed

his motion when the jury submitted Jury Question No. 2, stating, "If we cannot

come to a unanimous decision on element #4 of Count 6, are we to find the

defendant 'not guilty' . . . and then move on to the conspiracy of 'less than 100

kilograms?"  [Docket No. 206]  Ybarra claims that the Court erred in failing to

give his requested instruction.

The Court did not err in declining to give the withdrawal instruction, for

the reasons explained in its previous Order.  [Docket No. 200]  As the Court

noted, Ybarra's proposed instruction was in conflict with his theory of the

defense instruction, which the Court gave to the jury at his request.  Ybarra did

not previously request this instruction during the charge conference or at any

other time before the jury began deliberations.  The proposed instruction was not

supported by the evidence in the record.  There was no evidence that Ybarra took

a definite positive step to disavow or defeat the purpose of the conspiracy.

Finally, by the time Ybarra requested this instruction, the jury had already begun

deliberating for a significant amount of time and giving this additional

instruction at that time would have confused the jury and would have conveyed

undue weight to the withdrawal instruction.

17

### 5.    Cumulative Effect of Claimed Errors

Ybarra argues that, even if none of the asserted errors alone justify a new trial, cumulatively, they deprived him of his right to a fair trial.  The Court concludes that Ybarra has not pointed out any errors that, even collectively, would warrant a new trial.

## IV.   PREVIOUS MOTION FOR A MISTRIAL

During trial, Ybarra also filed a Motion to Dismiss for Mistrial or to Compel Stipulation.  [Docket No. 190]  During trial, the Court denied Ybarra's request for a mistrial and granted his request to compel a stipulation that, on May 9, 2007, Ybarra was unaware that his driving privileges were revoked.  The stipulation was given as Stipulation No. 5 during trial.  In order to clarify the record, the Court now memorializes that decision in this Order.

**IT IS HEREBY ORDERED:**

1.    As orally ordered during trial, Defendant's Motion to Dismiss for Mistrial or to Compel Stipulation [Docket No. 190] is **GRANTED IN PART** and **DENIED IN PART** as follows: Defendant's motion for a mistrial is denied and his motion to compel a stipulation is granted.

2.      Defendant Armando Ybarra's Motion for Judgment of Acquittal or
        for a New Trial [Docket No. 219] is **DENIED**.


Dated:   May 28, 2008                        s /Michael J. Davis
                                             Judge Michael J. Davis
                                             United States District Court